UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| WEI QIU, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 5:21-cv-00197-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| BOARD OF EDUCATION OF SCOTT COUNTY, KENTUCKY, | ) | **&** |
| | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on multiple pending motions. Ms. Qiu, a Chinese woman, brought this action alleging that the principal of Great Crossing High School engaged in national origin and other forms of discrimination by not hiring her for two chemistry teacher positions. [R. 35.] The parties filed cross-motions for summary judgment. [R. 88; R. 91.] Ms. Qiu also filed a motion seeking leave to amend her motion for summary judgment. [R. 101.] Finally, Scott County filed a Motion in Limine. [R. 92.] Ms. Qiu does not create a genuine issue of material fact on pretext, so Scott County's Motion for Summary Judgment [R. 91] is **GRANTED** and Ms. Qiu's Motion for Summary Judgment [R. 88] is **DENIED**. The Court also **DENIES** Ms. Qiu's Motion to Amend [R. 101] because it is futile and **DENIES AS MOOT** Scott County's Motion in Limine [R. 92].

**I**

This action is one of nine cases Ms. Qiu currently has pending against Kentucky school districts in federal court. [*See* R. 82 at 11 n.3.] The instant case is premised on Ms. Qiu's applications for two chemistry teacher positions, Job Postings 69 and 146, at Great Crossing

High School. [R. 35; R. 91 at 4-9.] Ms. Qiu applied for the first in Spring 2020 and the second in July 2020. [R. 35 at 5; R. 91 at 4.] She did not get an interview for the first application. [R. 35 at 5.] Scott County hired Rhonda Cosgrove for the position. [R. 91 at 4.]

After submitting her second application, she "emailed the Principal Joy Lusby for her attention to [Ms. Qiu's] application multiple times." *Id.* at 5. Principal Lusby called her with a "question about [her] resume" on July 14. *Id.* Scott County frames these calls as a "precursor to formal interviews . . . to confirm [the candidates] were still interested in the position. [R. 91 at 7.] Ms. Qiu claims that Principal Lusby "heard [her] accent in the call" and "excluded [her] from the job." [R. 35 at 5.] Principal Lusby "hired someone else [Dylan Perraut] on the day she called [Ms. Qiu.]" [*Id.*; *see also* R. 91 at 7.] Ms. Qiu claims that she was "highly qualified for the two chemistry teaching jobs." *Id.* She believes that Scott County hired less-qualified white candidates over her. [*See generally* R. 88.]

## II

### A

Summary judgment is appropriate when the pleadings, discovery materials, and other documents in the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). A genuine dispute exists "if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the Pres. of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The moving party has the initial burden of demonstrating the basis for their motion and identifying the parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The

movant may satisfy their burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant satisfies this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating there is a genuine issue in dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324).

The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). In doing so, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A plaintiff can prove her claims under Title VII by either direct or circumstantial evidence of intentional discrimination. *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 648–49 (6th Cir. 2012). "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id.* (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003)); *see also Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004) (direct evidence "proves the existence of a fact without requiring any inferences"). On the other hand, circumstantial evidence "is proof that does not on its face

establish discriminatory animus, but does allow a fact finder to draw a reasonable inference that discrimination occurred." *Wexler*, 317 F.3d at 570.

Ms. Qiu only offers circumstantial evidence of discrimination. She claims that Scott County did not hire her for either job posting because of her race, color, or national origin. [R. 35 at 5.] She specifically claims that she did not get Job Posting 146 because Principal Lusby called her and heard her accent. *Id.* Scott County hired white candidates for both positions, both of whom Ms. Qiu alleges were less qualified. [*See* R. 95 at 4.] Neither allegation is direct evidence of discrimination. Rather, they are circumstantial because one must infer from the fact that Scott County knew that Ms. Qiu was Chinese and that she has an accent that she was not hired because of her race, color, or national origin.

The *McDonnell Douglas* burden shifting framework applies to employment discrimination claims based on circumstantial evidence. *Geiger v. Tower Automotive,* 579 F.3d 614, 621 (6th Cir. 2009). The plaintiff must first establish a prime facie case of discrimination. *Schoonmaker v. Spartan Graphics Leasing, LLC,* 595 F.3d 261, 264 (6th Cir. 2010) (quoting *Reeves v. Sanderson Plumbing Products, Inc .,* 530 U.S. 133, 148 (2000)). If successful, the burden then shifts to the defendant employer to "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Id.* (citation omitted). Once this showing has been made, the burden of production shifts back to the plaintiff who must show that the employer's explanation was merely pretext for intentional discrimination. *Id.* (citation omitted). Although the burden of production shifts throughout the analysis, the burden of persuasion remains on the plaintiff to "demonstrate that [the protected characteristic] was the 'but-for' cause of their employer's adverse action." *Id.* (quoting *Geiger,* 579 F.3d at 620) (internal quotations marks omitted).

**1**

Under the *McDonnell-Douglas* framework, Ms. Qiu must first establish a *prima facie* case of gender discrimination by showing that: "(1) she is a member of a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified [for the position at issue], and (4) she was treated differently than similarly-situated male and/or nonminority employees for the same or similar conduct." *McClain v. NorthWest Community Corrections Center Judicial Corrections Bd.*, 440 F.3d 320, 332 (6th Cir. 2006); *see also Lewis v. Norfolk S. Ry. Co.*, 590 F. App'x 467, 469 (6th Cir. 2014) (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008)).

Scott County assumed for the purpose of its motion that Ms. Qiu can establish a *prima facie* case and does not present an argument on any of the four factors. [R. 91 at 15.] Because there is no argument on the first step, the Court will also assume for the sake of its analysis that Ms. Qiu can establish a *prima facie* case. Accordingly, the burden shifts to Scott County to produce a legitimate non-discriminatory reason for not hiring Ms. Qiu. *Schoonmaker*, 595 F.3d at 264. Scott County's proffered reason is that more qualified candidates applied. [R. 91 at 15-16.]

The defendant only bears a burden of producing a legitimate non-discriminatory reason. *Schoonmaker*, 595 F.3d at 264. "The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). It need only set forth "through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Id.* Scott County satisfies this burden. It submitted affidavits from Principal Lusby and Ms. Willis explaining their reasoning in not selecting Ms. Qiu. [*See* R. 91-7; R. 91-8.] They state that the selected candidates had better qualifications for the role. *See id.*

This satisfies the burden of producing a legitimate non-discriminatory reason for not hiring Ms. Qiu. *See White v. Metro. Housing Auth.*, 429 F.3d 232, 245 (6th Cir. 2005). Accordingly, the burden shifts to Ms. Qiu to show that Scott County's non-discriminatory reason was mere pretext. *Id.*

**2**

Ms. Qiu disputes Scott County's proffered reason by arguing that neither individual hired for the chemistry teacher positions was qualified. [R. 88 at 5-9.] She first disputes Ms. Cosgrove's qualifications, who was hired for Job Posting 69. [R. 95 at 4-6.] Ms. Qiu emphasizes that the posting did not state that it was only open to current Scott County employees, so Ms. Cosgrove should not have been "privileged" for the position because she was currently working for the district. *Id.* at 4. She also argues that Ms. Cosgrove "does not have any shining spot in her application," thought Ms. Qiu recognizes that Ms. Cosgrove taught AP Chemistry for the preceding ten years. *Id.* She also alleges that Ms. Cosgrove caused that AP class to "wither" because it was not offered for two years after she taught it in 2020-2021. *Id.* at 5. In contrast to Ms. Cosgrove, Ms. Qiu claims that she "was strong to teach both AP chemistry and chemistry," citing her high rate of 5 scores on AP exams, an "ETS Recognition of Excellence," a job evaluation from her time working in research labs at UK, and a letter of reference. *Id.*

Scott County explains that Ms. Cosgrove had "impeccable qualifications" for the position. [R. 91 at 5.] It emphasizes her "multiple subject area certifications," ten-year experience teaching AP chemistry, and that she was working on her dual-credit chemistry qualification. *Id.* The school also appreciated that she had worked in the district and could teach

6

multiple subjects. *Id.* It believed that Ms. Cosgrove's application was superior to Ms. Qiu's because Ms. Qiu had much less experience teaching and was only certified in one subject.

Ms. Qiu also explains her belief that she was more qualified than Mr. Perraut for Job Posting 146. [R. 95 at 7-8.] She states that he did not have any references, did not include his chemistry Praxis exam report in his application, and had previously applied for positions with Scott County twice before. *Id.* at 7. Ms. Qiu again relies on her AP 5 score rate, ETS Recognition of Excellence, job evaluation, and reference to argue that she was more qualified. *Id.*

Scott County explains why it selected Mr. Perraut over Ms. Qiu for Job Posting 146. [R. 91 at 7.] First, it emphasizes that Ms. Qiu indicated on her call with Principal Lusby that she was especially interested in teaching AP chemistry. *Id.* at 7-8 (citing R. 1 at 68). The position was to teach general chemistry. *Id.* Further, Scott County states that Mr. Perraut was "notably qualified" and that it had attempted to hire him in the past. *Id.* at 8. He graduated from UK's science education program and one of his professors stated that he is one of the "brightest individuals" in the program. *Id.* at 9 (quoting R. 91-7 at 20). He also had "high school and graduate level chemistry qualifications" and was willing to serve "an array of potential needs" at the school. *Id.*

A plaintiff can show pretext: "(1) by showing that the proffered reason had no basis in fact; (2) by showing that the proffered reason did not actually motivate the employer's conduct, or (3) by showing that the proffered reason was insufficient to warrant the challenged conduct." *White*, 429 F.3d at 245 (citing *Wexler*, 317 F.3d at 576). Ms. Qiu shows none of the three.

Ms. Qiu's motion primarily explains her disagreement with Scott County's assessment of the applications it received. [R. 88-1 at 5-9.] This disagreement is insufficient without some

7

evidence of discriminatory intent.  *Wrenn v. Gould*, 808 F.2d 808 F.2d 493, 502 (6th Cir. 1987).  "Title VII does not diminish lawful traditional management prerogatives in choosing among qualified candidates."  *Id.* (citing *United Steelworkers of America v. Weber*, 443 U.S. 193, 207 (1979)).  "So long as its reasons are not discriminatory, an employer is free to choose among qualified candidates."  *Id.* (citations omitted).  The employer's motivation is the focus of the inquiry, not "not the applicant's perceptions, or even an objective assessment, of what qualifications are required for a particular position."  *Id.*

Scott County provides reasonable explanations for its choices to hire Ms. Cosgrove and Mr. Perraut over Ms. Qiu.  [R. 91 at 4-9.]  Ms. Qiu may disagree with that choice, but she has no evidence that Scott County's conclusion that those individuals were more qualified is untrue, not its true motivation, or insufficient to not hire her.  *White*, 429 F.3d at 245.

Ms. Qiu's only allegation of discriminatory intent is that her first application was not chosen because her Chinese origin was evident from her resume and that her second application was rejected after Principal Lusby heard her Chinese accent.  [R. 88-1 at 5.]  But she presents nothing beyond her own suspicion to support her belief that her national origin was the actual reason that Scott County rejected her applications.  "Mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment."  *Peters v. Lincoln. Elec. Co.*, 285 F.3d 456, 470 (6th Cir. 2002) (quoting *Carney v. Cleveland Heights-Univ. Heights Sch. Dist.*, 758 N.E.2d 234, 245 (Ohio Ct. App. 2001)).  Ms. Qiu's suspicion is insufficient without "evidence that the employer's proffered reasons were factually untrue."  *Peters*, 285 F.3d at 470 (citing *Carney*, 758 N.E.2d at 245).[1]

---

[1] The Sixth Circuit was considering Ohio's employment discrimination statute.  *Peters*, 285 F.3d at 469. The analysis is applicable to the instant claim because, as the Circuit noted, "Ohio courts have adopted the framework established in federal case law concerning Title VII and the Age Discrimination in Employment act ("ADEA")."  *Id.*

That Scott County knew that Ms. Qiu is Chinese and has an accent, then hired someone else for the two positions, is not evidence that its proffered reason—the hired candidates having better qualifications—was factually untrue.

Ms. Qiu's position can be summed up by her statement that "it is not about the quality of the applicants for the position – it is about discrimination against Chinese." [R. 95 at 4.] In contrast, it *is* about the quality of the candidates. Scott County claims that it hired Mr. Perraut and Ms. Cosgrove because they were more qualified. [R. 91 at 6-9.] It provides reasonable explanations for that perspective. *Id.* at 15-16. The mere fact that Ms. Qiu is Chinese and has an accent does not establish that Scott County's explanations are pretext. *Peters*, 285 F.3d at 470. If her position was correct, any individual who is a member of a protected class could bring a successful employment discrimination claim so long as the employer was aware of that protected class. Title VII does not require as such. Ultimately, Scott County is entitled to summary judgment.

### B

Having determined that Scott County is entitled to summary judgment, the Court will deny Ms. Qiu's motion to amend her summary judgment motion as moot. The Court first turns to Ms. Qiu's motions to amend her motion for summary judgment. [R. 101.] She asks to "add her lost wages and benefits of three years" and includes Scott County's salary schedule. [R. 101.] Scott County opposes the motions. [R. 102.] It emphasizes that the motions were made "more than three months after the dispositive motion deadline," do not have sufficient justification, and would be futile. *Id.* at 1.

The Court agrees that the amendment would be futile. Ms. Qiu's proposed amendment goes to damages, which she is not entitled to given that judgment in the Defendant's favor is

9

forthcoming. Therefore, amending the motion to include her alleged lost damages is futile and amendment is not warranted. *See Riverview Health Inst. v. Medical Mut. of Ohio*, 601 F.3d 505, 520 (6th Cir. 2010). In fact, Ms. Qiu's reply recognizes that her lost wages and benefits only become relevant "once [her] Motion for Summary Judgment is granted." [R. 103-1.] The Court denies her Motion to Amend her Motion for Summary Judgment. [R. 101.]

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendant's Motion for Summary Judgment **[R. 91]** is **GRANTED**;

2. The Plaintiff's Motion for Summary Judgment **[R. 88]** is **DENIED**;

3. The Plaintiff's Motion to Amend **[R. 101]** is **DENIED**;

4. The Defendant's Motion in Limine **[R. 92]** is **DENIED AS MOOT**; and,

5. An appropriate judgment will be entered contemporaneously herewith.

This the 24th day of May, 2023.

Gregory F. Van Tatenhove
United States District Judge